IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 8, 2026

**STATE OF TENNESSEE v. COREY ELLIS**

**Appeal from the Criminal Court for Shelby County**
**No. 18-00656/19-05148     Carlyn L. Addison, Judge**

_____

**No. W2025-01178-CCA-R3-CD**

_____

The Defendant, Corey Ellis, appeals from the order of the trial court revoking his probation. The Defendant contends the trial court failed to consider the Defendant's amenability to future rehabilitation or whether he was a danger to others when deciding on revocation. He also argues that the trial court failed to consider an updated risk and needs assessment. After review, we affirm the judgments of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Barry W. Kuhn and William VanScoy, Assistant Shelby County Public Defenders, for the appellant, Corey Ellis.

Jonathan Skrmetti, Attorney General and Reporter; Kelly M. Telfeyan, Assistant Attorney General; Steve Mulroy, District Attorney General; and Ryan Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 7, 2018, the Defendant entered a guilty plea to aggravated assault and received a five-year sentence, which was suspended to supervised probation with the condition that the Defendant attend anger management classes, obtain gainful employment, and have random and frequent drug screenings. The judgment stated "No PSRS if violates." On April 28, 2021, while still on probation, the Defendant entered a guilty plea to another aggravated assault and was sentenced to three years. At the guilty plea hearing, the Defendant acknowledged that his new offense violated the terms of his existing probation. The Defendant received a three-year suspended sentence, consecutive to the

original five-year suspended sentence term from the 2018 offense, resulting in a total sentence of eight years' probation. The court also ordered special probation conditions, including completion of eight anger management classes, submission to random drug screenings, and no contact with the victim. The judgment for this case stated, "NPNC CT2" and "No PSRS if violates." At the plea hearing, the court further explained the following:

> [THE COURT]: Now, you have also made, as part of this agreement, that if you violate the conditions of this probation, and I send you to jail, and not reprobate you, you will not ask for a time cut; is that correct?
>
> [THE DEFENDANT]: Yes, sir.
>
> [THE COURT]: Okay. Then you've got to be very careful to obey the law and to stay out of trouble and report to your probation officer, okay?
>
> [THE DEFENDANT]: Yes, sir.

On January 30, 2025, the State issued a warrant alleging that the Defendant had violated the conditions of his probation. The probation violation report issued by the Tennessee Department of Correction listed the Defendant's probation violations as follows:

> Rule No. 6: "I will allow my Probation Officer to visit my home, employment site, or elsewhere, will carry out all instructions he or she gives; will report to my Probation Officer as instructed; will comply with mandates of the Administrative Case Review Committee, if the use of that process is approved by the Court; will comply with a referral to Resource Center Programs, if available by attending; and will submit to electronic monitoring and community service, if required."
>
> [The Defendant] has failed to comply with reporting requirements as instructed. [The Defendant] was scheduled to report to the probation office on 11/07/2024, at 10:00 a.m., but he failed to report. On 11/19/2024, Officer Robinson attempted to contact [the Defendant] again by calling his mother's phone at [], but the call was abruptly ended when she hung up on the officer. Later that day, [the Defendant] returned Officer Robinson's call, stating that he had forgotten about the office visit and requested a new officer. He expressed dissatisfaction with the increased frequency of drug testing, stating that such tests were not as frequent prior to Officer Robinson assuming the

role of his supervising officer. Additionally, he conveyed frustration with the ongoing requirement to attend classes, describing a sense of fatigue with the continuous obligations. During the call [the Defendant] was reminded of his probation rules and special conditions. Officer Robinson instructed [the Defendant] to report to the office on 11/21/2024, at 10:00 a.m. However, [the Defendant] did not attend the scheduled visit. Additionally, Officer Robinson was unable to reach [the Defendant] to reschedule a third visit as his phone was reported to be nonfunctional. As of the writing of this report, [the Defendant] has failed to report to the office for the months of November and December 2024.

Rule No. 8: "I will not use intoxicants (beer, whiskey, wine, etc.) of any kind to excess, or use or have in my possession narcotic drugs or marijuana. I will not enter an establishment whose prime purpose is to sell alcoholic beverages (bars, taverns, clubs, etc.). I will submit to random drug screens as directed."

[The Defendant] reported for his office visit on 6/27/2024. During the visit, Officer Robinson provided [the Defendant] with a monthly reporting form and instructed him to complete a drug screen. However, [the Defendant] initially refused to submit to the drug screen and left the office. Officer Robinson then contacted [the Defendant] by phone and instructed him to return to the office. Upon his return, [the Defendant] spoke with Manager Taper, who explained the consequences of refusing a drug screen, specifically that it would result in a violation of his probation. After this explanation, [the Defendant] agreed to take the drug screen. The results of the drug screen came back positive for THC. As a result, Mr. Ellis was sanctioned to attend an emergency Forensic Social Worker (FSW) appointment and drug counseling program as part of his probationary requirements.

Rule No. 9: "I agree to pay all required fees to the Supervision and Criminal Injuries fund unless waived by appropriate authorities. Additionally, if so, ordered by the court, I will pay all imposed fines and court costs."

[The Defendant] currently has an outstanding supervision fee balance of $2,536.38. To date, he has made no attempt to make any payments toward this balance during the course of his probation sentence. He has been instructed at every office visit to make a payment.

Rule No. 10: "I will observe any special conditions imposed by the Court as listed below: random drug screens, 8 am classes, no contact with [the victim] and Anger Management classes."

[The Defendant] failed to complete the scheduled random drug screen on 11/07/2024, and has not reported for any Anger Management classes as instructed. In response to his failed drug screens, [the Defendant] was sanctioned by the FSW and Officer Robinson to attend drug classes. [the Defendant] only reported to the initial drug assessment on 07/02/2024 and one class on 10/17/2024. On 10/17/2024, Officer Robinson spoke with Counselor Couch [] to confirm the reporting procedures for [the Defendant] regarding both drug counseling and Anger Management classes. On 12/20/2024, [the Defendant] was unsuccessfully discharged from Donnie Couch for failure to attend and participate.

On April 2, 2025, the Tennessee Department of Correction issued an amended probation violation report stating that the Defendant incurred new felony charges of rape, criminal attempt rape, and sexual battery. The report listed the Defendant's additional probation violations as follows:

Rule No. 1: "I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances."

[The Defendant] was arrested on 04/01/2025 for Rape, CA: Rape, and Sexual Battery. The case number is C2500854. The bond is set at $75,000 and the offender is in custody at the Shelby County Criminal Justice Center. The case is held in Criminal Court Division III and there is no known court date at the writing of this report.

. . . .

Rule No. 14: "I will not engage in any assaultive, abusive, threatening or intimidating behavior. Nor will I participate in any criminal street gang related activities as defined by TCA 40-35-121. I will not behave in a manner that poses a threat to others or me."

[The Defendant] was arrested on 04/01/2025 for Rape, CA: Rape, and Sexual Battery.

- 4 -

A revocation hearing was held on July 7, 2025. Officer Monique Robinson, a probation officer with the Tennessee Department of Correction, testified that she supervised the Defendant on probation. Officer Robinson testified that the Defendant attended only two of the required drug counseling and anger management classes and missed six, which ultimately resulted in his discharge from the program in December 2024. She stated that the Defendant failed three drug screens during the course of his probation. Officer Robinson further testified that, in November 2024, she made several unsuccessful attempts to contact the Defendant regarding reporting for a random drug screening. She stated that the Defendant eventually returned her call and said that he wanted a new probation officer due to the frequency of the random drug screenings. Officer Robinson testified that she reminded the Defendant that compliance with random drug screenings was a condition of his probation, to which the Defendant responded that "he wasn't coming."

On cross-examination, Officer Robinson confirmed that the Defendant only went to the initial anger management meeting and missed every other scheduled meeting. Officer Robinson also stated that the Defendant was enrolled in both a work program and drug program, but he "stopped showing up" and was eventually discharged from the whole program. Officer Robinson said that, in 2023, before she supervised the Defendant, he violated his probation for failing to comply with instructions during a home visit, failing his drug screening, failing to carry out the special conditions of his probation, and for nonpayment of fees and fines.

On redirect examination, when asked if the Defendant had any more violations prior to the 2023 violation, Officer Robinson stated that he did not. The trial court then began questioning Officer Robinson, and the following exchange occurred:

> THE COURT: The information that you have before you, do you -- can you give me any, like – do you have any internal Criminal Court numbers on how you track the case? Is it a C-number? Is it the indictment number?
>
> WITNESS: The C-number, C1801008.
>
> . . . .
>
> THE COURT: So that's one. Is that the only number you have? Is that the only C-number you have?
>
> THE WITNESS: And then it's C1907220.

THE COURT: Okay. Thank you. So I guess where I'm confused is on your C1801008, which to us is the 2018 indictment, he entered a guilty plea on September 7th of 2018, and the Court indicated that there would be no petition to suspend the remainder of his sentence should he violate.

Then in 2021, Indictment No. 19-05148, your C-number ending in -220, the Court also stated no petition to suspend the remainder of sentence if he violates. So what I'm trying to figure out is what are we doing? What are we doing?

[STATE]: Your Honor, and that was -- that was what I was, you know, trying to sort of fetter out with her, that I have on my file that on April 28th, 2021, he consented to a violation and restarted his probation for five years and -- for five years and then three years' probation – it's kind of confusing, but it was consecutive to the five for a total of eight years. It was restarted on April 20th, 2021, no PSRS. That's what I have on my file as well.

So I mean, the dates are not quite lining up to what Ms. Robinson is testifying to; however, the Court record, and I think what is in Odyssey, Your Honor can take judicial notice of the prior filings in this case.

THE COURT: [Trial Counsel], your goal obviously when you have a hearing -- our policy is consent or have a hearing, right?

[TRIAL COUNSEL]: Yes, ma'am.

THE COURT: But if the previous judicial officer has indicated that there will be no such relief for your client, what's our next step?

[TRIAL COUNSEL]: Oh, well, I think I would maintain that the testimony that has been given here would go to a technical violation.

THE COURT: Even if it were a technical, he cannot go back on probation according to what he's already signed and agreed to. That's my understanding. Am I wrong in that?

. . . .

THE WITNESS: Well, like you said before, he don't supposed to go back on probation.

- 6 -

THE COURT: I don't understand what we're doing --

THE WITNESS: Right.

THE COURT: -- because I am under the impression that when we have a hearing, there's at least a possibility --

THE WITNESS: Right.

THE COURT: -- that you can go back and your probation can be reinstated.

THE WITNESS: He don't supposed to --

THE COURT: But what I'm told by these documents is [the previous trial judge] said absolutely not twice.

THE WITNESS: Right.

. . . .

THE COURT: I need people to take better care on the use of my time. This is not the best use of my time when we already know how this is going to end based on the previous judge's information contained on the judgment sheets.

So right now, three hours after I've taken the bench we're on witness number two on a situation that's already been decided before I even took the bench.

Officer Tracey Judd, a police officer for the Memphis Police Department, testified that, on May 4, 2024, she responded to a call from the mother of a juvenile, who alleged that the Defendant had sexually assaulted her thirteen-year-old daughter. Officer Judd spoke to the mother and the victim and testified to the following information:

[The Defendant], asked [the victim] to come out of her room around three – 0300 hours that morning, April 29th. He told her to go into the living room and have a seat onto the couch where he then pulled his penis out of his boxers and placed it into her mouth.

. . . .

- 7 -

[The victim] advised that she moved her head side to side in an attempt to get him off of her. He then placed her legs into the air and pinned one arm down and placed the other over her mouth where he attempted to penetrate her vagina with his penis. He was unsuccessful, and from there, he put his penis back into his shorts and began to penetrate her vagina with his finger. [The victim] stated that they heard her mother coming down the hallway so he shoved her into the kitchen where she pulled her pants back up.

Officer Judd stated that she informed the victim and her mother that the victim needed to go to the hospital for a rape kit. She initially met the victim and her mother at their residence to collect and bag the clothing the victim had worn that day, and then accompanied them to the Memphis Sexual Assault Resource Center (MSARC), where the rape kit was performed. Officer Judd also stated that she made a referral to the Department of Children's Services.

Sergeant Chanel Robinson, a police officer with the MPD Special Victims Unit (SVU), testified that the case was assigned to her unit after Officer Judd completed the initial report. Sergeant Robinson stated that the victim was interviewed by a forensic interviewer who "specializes in speaking with children and getting child statements." Sergeant Robinson met with the victim, showed her a photographic lineup, and the victim identified the Defendant. Sergeant Robinson also confirmed with the victim's mother that the Defendant had access to the victim because the mother and the Defendant were in a relationship.

Sergeant Robinson attempted to interview the Defendant to obtain "his side of the story." The Defendant told Sergeant Robinson that he would answer questions via phone, but he would not do an in-person interview. Sergeant Robinson stated that, in a brief phone call, the Defendant acknowledged that he and the victim's mother were in a relationship for a period of time and that he had spent the night at her house a few times, but he denied ever meeting the victim. Sergeant Robinson stated that, based on her investigation, she submitted an indictment for rape, criminal attempt rape, and sexual battery. Sergeant Robinson confirmed the victim was thirteen years old.

At the close of proof, the trial court determined that the Defendant had violated his probation. The trial court found the following:

The Supreme Court previously held that it is not an abuse of discretion if the Trial Judge revokes a defendant's probations due to various violations which is what we have here. We don't have a simple I failed to call in or I didn't charge my ankle monitor.

What we have are seven different failures of drug screens not including or limited to refusal to take screens. We have a no show for drug counseling, reporting to office visits. Before we even get into the felony -- the rearrest for the rape, criminal attempt rape, and sexual battery, and to note, if you -- I don't know if anybody else looked at Exhibit A, but he had previously at the tender age of 18 had a statutory rape charge which was dismissed, but he did also very – he's had quite a bit of contact with the criminal justice system here in Shelby County, and he's had probation before so he knows what's expected of him. So he can't say that he didn't understand what is required when one has a suspended sentence especially having gone on probation once.

Now, here's what's fun. The first charge, the 2018 indictment, he was arrested on July 17th of 2017. We're talking a full eight years later he has not done anything that he agreed to do by way of this judgment and this conviction which is what it is. So eight years later, he is still dealing with this unsuccessfully might I add. What are we even doing?

Random screens, eight anger management classes, no contact. That's on the 2018 indictment. No, 2019. He was arrested for the first time. There was outstanding warrants on this other stuff. And then, September 7th of 2018, he got another aggravated assault charge.

. . . .

No PSRS. No petition to suspend the remainder of sentence. Even if he were -- even if it were just technical, where's he gonna do his 60 days while he's pending in 3? I'mma let him out to go do his drug counseling and I'mma let him out to go do his tests? Am I gonna let him out to do his anger management? How am I gonna let him out?

. . . .

He cannot be on probation incarcerated. He cannot ask for this probation to be reinstated when he agreed previously to not petition the Court for this relief. The State has satisfied the burden by a preponderance of the evidence that the defendant violated his probation, and it is hereby revoked. He shall serve his eight-year sentence.

- 9 -

When asked by the State for further clarification as to the basis on which the Defendant's probation was being revoked, the court responded, "He's being violated for the -- everything that I just said. Lack of drug counseling, lack of anger management, rape of a 13[-]year[-]old allegedly." The trial court ordered the Defendant to serve the remainder of his effective eight-year sentence in confinement. The trial court gave the Defendant jail credits for November 15, 2020 to April 28, 2021 and April 1, 2025 to July 7, 2025. The Defendant filed a timely notice of appeal.

## ANALYSIS

Under State v. Dagnan, probation revocation requires a two-step analysis. 641 S.W.3d 751, 757-58 (Tenn. 2022). First, the trial court must determine whether the defendant violated a condition of probation; second, upon finding a violation, the court must determine the appropriate consequence to impose. Id. at 753. On appeal, the Defendant does not contest the trial court's finding that he violated the conditions of his probation based on his repeated failures to report for drug counseling and anger management, his refusal and failure to submit to drug screenings, and his new arrest for rape, criminal attempt rape, and sexual battery. Because the Defendant does not challenge the first step, we proceed directly to the consequence determination. The Defendant argues that the trial court abused its discretion in ordering full revocation of probation without considering his risk and needs assessment, factors relevant to the nature and seriousness of the violation, and the Defendant's amenability to future rehabilitation. In response, the State contends that the trial court acted within its discretion in revoking probation based on the proof showing that the Defendant committed multiple violations, including serious felony offenses. We agree with the State.

Appellate courts review a trial court's revocation of a defendant's probationary sentence under an abuse of discretion standard with a presumption of reasonableness. Dagnan, 641 S.W.3d at 759. Once the trial court has determined that a violation of probation occurred, it has the discretionary authority to (1) order confinement; (2) order the sentence into execution as initially entered; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to one year. See State v. Hunter, 1 S.W.3d 643, 646-47 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3-CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar, 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); Tenn. Code Ann. §§ 40-35-308, -310, -311 (Supp. 2021).

In considering the appropriate consequence to impose upon revocation, a trial court may consider, but is not limited to, several factors including: the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's

character.  Dagnan, 641 S.W.3d at 759 n.5.  Consideration of past criminal history is only appropriate in the second part of the two-step analysis.  Id.  A trial court may also consider a defendant's amenability to correction and whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation.  Tenn. Code Ann. § 40-35-102(3)(C); State v. Owens, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), no perm. app. filed.  Finally, a trial court may consider whether the violation shows that the defendant is a danger to the community or individuals in it.  Tenn. Code Ann. § 40-28-302(1) ("Supervised individuals shall be subject to: (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large and cannot be appropriately managed in the community[.]"); State v. Rand, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024).

First, the Defendant contends that the trial court erred by failing to request and consider an updated risk and needs assessment before making its determination.  Tennessee Code Annotated section 40-35-311(f) provides that "[t]he [trial] court *may* consider the results of an offender's validated risk and needs assessment in determining the appropriate disposition of the probation violation charge and *may* request an updated validated risk and needs assessment be performed."  Tenn. Code Ann. § 40-35-311(f) (emphasis added).  "[T]he decision to consider the validated risk and needs assessment, as well as the decision to request an updated assessment, is discretionary."  State v. Charles E. Mason, Jr., No. E2018-01310-CCA-R3-CD, 2019 WL 3992473, at *5 (Tenn. Crim. App. Aug. 23, 2019), no perm. app. filed.  Additionally, at the revocation hearing, the Defendant never requested the trial court to order an updated assessment or to rely on such an assessment.  Accordingly, the trial court did not abuse its discretion in failing to order an updated risk and needs assessment.

Next, the Defendant argues that the trial court "made no finding that the [D]efendant was not amenable to future rehabilitation nor that he was a danger to others."  "[T]he consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation."  State v. Rand, 696 S.W.3d at 106 (citing State v. Robinson, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022)).  As the supreme court observed in Dagnan, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, the defendant's criminal history, and the defendant's amenability to future rehabilitation.  See Dagnan, 641 S.W.3d at 759 n.5.

Although the trial court was not required to make express findings on each factor bearing on the consequence determination, see Dagnan, 641 S.W.3d at 759 (noting that it

is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision), the record demonstrates that the court considered the factors Dagnan identified as relevant, including the nature and seriousness of the violation, the Defendant's prior history on probation, his criminal history, and his amenability to continued supervision. Dagnan, 641 S.W.3d at 759 n.5. The trial court emphasized that for eight years following his 2018 conviction, the Defendant "has not done anything that he agreed to do," a finding directly relevant to his amenability to rehabilitation. The Defendant repeatedly failed to attend court-ordered counseling, refused or failed to submit to drug testing, accumulated unpaid supervision fees exceeding $2,500, and was discharged unsuccessfully from both drug and anger-management programs. These failures occurred despite the Defendant's extensive probation experience and clear instruction regarding the expectations of supervision. The Defendant even informed his probation officer that he "wasn't coming" to scheduled visits—conduct that reflects an unwillingness to comply with future probationary requirements.

The trial court also considered the seriousness of the new violations, which included new felony charges for rape, criminal attempt rape, and sexual battery involving a thirteen-year-old child. These allegations, supported by sworn testimony at the revocation hearing, bear directly on public-safety considerations and fall squarely within the type of conduct a trial court may consider when determining whether continued probation poses an unmanageable risk to the community. See Tenn. Code Ann. § 40-28-302(1); Rand, 696 S.W.3d at 106.

The trial court further noted that the judgments underlying the Defendant's probation expressly stated "No PSRS if violates," which the court understood to mean that the Defendant acknowledged, at the time of sentencing, that he would not seek reinstatement or modification of probation in the event of a violation. While this language did not eliminate the trial court's duty to exercise discretion, it was an appropriate consideration in evaluating whether continued probation would be effective or appropriate under the circumstances.

Finally, the court observed that lesser sanctions were not viable because the Defendant was already in custody on the new felony charges and had demonstrated no willingness to participate in rehabilitative programming when previously afforded the opportunity. Given the Defendant's longstanding noncompliance, repeated violations, and the seriousness of his alleged new criminal conduct, the trial court reasonably concluded that further probationary efforts would be ineffective.

Accordingly, the trial court acted well within the range of permissible discretionary decisions recognized in Dagnan when it revoked the Defendant's probation and ordered

him to serve the remainder of his sentence in confinement. We conclude that the trial court did not abuse its discretion in determining the appropriate consequence for the Defendant's violations, and we affirm its judgments.

## CONCLUSION

Upon review, we affirm the judgments of the trial court.

s/ *Camille R. McMullen*
CAMILLE R. MCMULLEN, JUDGE